HENRY L. DAVIS v. THE WESTERN UNION TELEGRAPH CO.

A telegraph company is bound to transmit to their destination all messages in the order of time they are received.

When dispatches are willfully delayed in their transmission, and a preference is given to one individual over another, whereby he receives damage, the court will not limit the damages he may recover against the telegraph company to the technical loss he has sustained, but rather award him a liberal compensation for the injury.

This case was reserved from Special Term upon the defendant's motion for a new trial, the verdict below having been there rendered-for the plaintiff.

The petition alleges that the plaintiff was engaged in Cincinnati as a commercial news agent, and in furnishing to bankers, brokers in that city, reports in regard to public securities, gold, currency, stocks, bonds, and merchandise, which reports the plaintiff received from his agents in New York City, and was enabled to deliver and did deliver to his customers in advance of information received in Cincinnati by other parties and from other sources. That he was accustomed to receive, and did receive, his reports from New York over the wires and lines of the defendant, who was and is an incorporated company under the laws of Ohio, having offices both in New York and Cincinnati. That on the 17th day of April, 1867, the defendant received in New York from the plaintiff's agent a dispatch in writing, properly prepared for transmission, in accordance with the rules of said company, which dispatch the defendant then undertook promptly, and in due course of business and without partiality or favor to other persons, to deliver to the plaintiff, at Cincinnati, for the usual price demanded for the conveyance of said dispatches. That the defendant, wrongfully and maliciously intending to injure the plaintiff in his business aforesaid, purposely delayed and hindered the sending and delivery of said dispatch, giving unlawful and improper precedence to another dispatch of a rival commercial news agency, known as the Commercial News Department, which was received by the defendant after the delivery of the plaintiff's dispatch, but was wrongfully forwarded and sent by the defendant to Cincinnati, and made public in advance of the plaintiff's dispatch, thus delayed and held back.

The plaintiff further alleged that on the 19th day of April, 1865, the defendant, in furtherance of their unlawful purpose, issued an order to its operatives and subordinates

as follows: "To all officers: When the letters C. W. D. are used, all operations must give way, as that business must have preference in everything."

It is further alleged the letters "C. W. D.," in said order, were intended to denote the dispatches of a rival agency in the same business with the plaintiff, and in which, it is charged, certain officers of the Western Union Telegraph Company were interested, and given an unlawful advantage and precedence in the transmission of commercial news dispatches over the defendant's lines, in violation of the plaintiff's rights in the premises; and which order was enforced against the plaintiff, whereby the dispatches sent to him were interrupted and otherwise hindered in their transmission, whereby he suffered great loss. The petition contained nineteen other causes of action, founded on similar delinquencies on the part of the defendant, ten of which were found to have arisen since the suit was brought, and were, therefore, stricken from the record by the court. Nine of the causes of action, however, including the period of time between April 17 and May 21, 1867, alike in substance to that stated in the first count, still remained, and were set down for trial.

A general denial was made, in the answer of the defendant, of all neglect of duty; that no preference was given to other companies or individuals, and insisting that the plaintiff enjoyed all his rights in the transmission of telegrams.

On the trial at Special Term, the jury found three thousand dollars damages for the plaintiff.

*Corwine & Corwine*, for plaintiff.

*Collins & Herron*, contra.

STORER, J. We are now asked, as the whole evidence is embraced in the record, to grant a new trial. No complaint is made of the charge of the court to the jury; the

only question urged is that the damages are excessive. It is admitted by counsel that the testimony, although conflicting, was fairly left to the jury, and as it was their province to reconcile it, the court may well suppose they performed that duty impartially; indeed, we can not well conceive of a case where the sound discretion confided to the jury was more fully required to be exercised.

We have examined the bill of exceptions, and are satisfied the weight of the evidence was in favor of the plaintiff. The jury, it is said, should not have awarded more damages than the plaintiff could prove he had sustained; and the amount, it is claimed, could not, on the best estimation, be made to exceed $450. This sum, it is claimed, could not be increased by a computation of losses not clearly the immediate result of the defendant's misconduct. We admit, as a general rule, that the measure of damages for a breach of contract is the amount of loss really sustained by the injured party, but in the application of this rule a liberal course may be pursued whenever the violation of an agreement is proved to have been willful or causeless on the part of the defendant.

In the case before us, it is in evidence that the plaintiff's business was not only affected so far as the direct injury he sustained by the neglect to forward the dispatches of his agent from New York to Cincinnati, but his business was finally broken up by the constant irregularities of the telegrams he ought in good faith to have received. And it is very evident the formation of a company, composed of the officers and stockholders of the telegraph company, whose object was to transact the same business in which the plaintiff had been previously engaged, gave to the defendant every facility successfully to compete with the plaintiff, as they had the control of their wires, and could prescribe, as they did, the rule by which their subordinates were to be governed, which appears, to use the language of the superintendent's order, at all times to

Davis *v.* The Western Union Telegraph Co.

give the precedence to those dispatches on which a private mark was affixed.

It is evident that the mere allowance of the amount of loss the plaintiff proved he actually sustained, would not, in justice, remunerate him for the violation by the defendant of its agreement, and the jury might very properly have given an additional sum. This, then, may have been in positive evidence to establish the real damages the plaintiff might have suffered.

The duty of a telegraph company, in the receipt and transmission of dispatches, requires promptitude, impartiality, and good faith on its part. There can' not be any preference permitted, or special favors granted, to any of those who may offer their dispatches for transmission; all are entitled to the same privileges, subject only to priority in time. He who first presents himself is to be first served. On any other theory, a telegraph company may become a perfect monopoly for favored parties; and, what is worse, a close corporation merely, for the benefit of the few to the prejudice of the many.

While holding this view of what the jury might have properly done, and what is the law of the case, we are satisfied the verdict was greatly in excess of the damages the plaintiff really sustained. We think there should be a remitter of $2,000 from the verdict; and if that is assented to by the plaintiff, judgment will be rendered for the residue; if not, a new trial will be granted at defendant's costs.

Remitter assented to, and judgment entered on verdict.